

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RUBY BELL, ROBERT PATTERSON, )
EDDIE MAE BINION, ALOCIA )
BROWN, by her legal guardian Robert )
F. Harris, KEVIN HARRIS, by his legal )
guardian Robert F. Harris, GEORGE )
CRAWFORD, by his trustee Art )
Huenkemeier, A.L., by her mother and )
next friend Diane Bauknight, RUBY )
TRAMMELL, DELLA OTIS, MARY )    No. 06 C 3520
WEST, BETTY JO WATKINS, T.W., Jo. )
N. and Ja. N., by their next friend Janie )
Cook, and JEROME WINDLEY, )    Judge Ronald A. Guzmán
individually and on behalf of all similarly )
situated persons, )
    )
        Plaintiffs, )
    )
        v. )
    )
MICHAEL LEAVITT, Secretary of the )
United States Department of Health )
and Human Services, )
    )
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs have sued on behalf of themselves and all others situated similarly to enjoin

defendant from enforcing regulations that require states to obtain proof of citizenship from

certain applicants for and recipients of Medicaid benefits. The case is before the Court on

plaintiffs' amended motion for a temporary restraining order ("TRO") and preliminary injunction

and amended motion for class certification.[1] For the reasons set forth below, the amended motion for a TRO is denied, the motion for class certification is granted in part and stricken as moot in part, and the motion for preliminary injunction is referred to the Magistrate Judge.

## Background

To become and remain eligible for Medicaid benefits, an applicant or recipient must, among other things, demonstrate that he is "a citizen or national of the United States, [or] . . . is in a satisfactory immigration status." 42 U.S.C. § 1320b-7(d)(1)(A). Until recently, an applicant or recipient could make that showing by making "a declaration [of citizenship] in writing, under penalty of perjury." *Id.* Last year, however, Congress amended the Medicaid statute to require participating states to obtain specific kinds of documentary proof of U.S. citizenship from certain Medicaid applicants and recipients. *See* 42 U.S.C. § 1396b(x)(1)-(3).

The documentation requirement applies to "determinations of initial eligibility for medical assistance made on or after July 1, 2006, and to redeterminations of eligibility made on or after such date in the case of individuals for whom the [new] requirement . . . was not previously met." Deficit Reduction Act of 2005, Pub. L. No. 109-171 § 6036, 120 Stat. 4, 81 (2005). It does not, however, apply to all applicants for and recipients of Medicaid. People "entitled to or enrolled for [Medicare] benefits," those who receive Medicaid benefits as a consequence of "receiving supplemental security income [SSI]" and those who, in defendant's view, have previously provided "satisfactory documentary evidence of citizenship or nationality"

---

[1]Four Illinois State agencies, the State of Maryland and the State of West Virginia also filed a brief in support of plaintiffs' motions that details the burdens the regulations will impose on them if not enjoined.

are exempt from the new requirement. *See* 42 U.S.C. § 1396b(x)(2); 71 Fed. Reg. 39214, 39215-16 (July 12, 2006) (noting that the description of the exemption in the statute contains a "scrivener's error" and the statute should be interpreted "so that the exemption . . . applies to 'individuals' rather than 'aliens'").

The statute requires the Secretary, "[a]s soon as practicable after the date of enactment . . . [to] establish an outreach program that is designed to educate individuals who are likely to be affected by the [new] requirements . . . about such requirements and how they may be satisfied." 120 Stat. at 81.

On July 12, 2006, defendant promulgated "interim final" regulations to implement the new requirement. The regulations require applicants and recipients to present original or certified copies of documents establishing U.S. citizenship and identity. 71 Fed. Reg. at 39216. The regulations divide such documents into four categories. The first category, designated as "primary evidence," consists of U.S. passports, certificates of naturalization or citizenship, a valid driver's license issued by a state that conditions receipt of a license on proof of U.S. citizenship or social security number verification and, for states "that do not provide Medicaid to individuals by virtue of their receiving SSI, a State match with the State Data Exchange for [SSI] recipients." *Id.* at 39222. Primary evidence "must be accepted as satisfactory documentary evidence of both identity and citizenship." *Id.*

If primary evidence is not available, the regulations permit applicants and recipients to rely on secondary evidence to prove citizenship: a U.S. public birth certificate; State Department-issued reports and certificates of the births of U.S. citizens abroad; U.S. citizen, Northern Mariana and American Indian identification cards; final adoption decrees and U.S.

3

Military records showing a U.S. place of birth; and evidence of U.S. Civil Service employment before June 1, 1976. *Id.* at 39222-23. If secondary evidence is used, however, the applicant or recipient must also present one of the following documents to verify his identity: a driver's license with a photograph or other identifying information; a school identification card with a photograph; a U.S. military card or draft record; an identification card issued by federal, state, or local government with the same information included on driver's licenses; a military dependent's identification card; a Native American Tribal document; a U.S. Coast Guard Merchant Mariner card; a Certificate of Degree of Indian Blood or other U.S. American Indian/Alaska Native Tribal document with a photograph or other identifying information; or "a cross match with a Federal or State governmental, public assistance, law enforcement or corrections agency's data system to establish identity if the agency establishes and certifies true identity of individuals." *Id.* at 39222-25.

If neither primary nor secondary evidence is available, applicants and recipients can rely on third level evidence. Such evidence includes "[e]xtracts of . . . hospital record[s] on hospital letterhead established at the time of the person's birth" and "[l]ife, health, or other insurance record[s]" that were created five years before the initial application date and show a U.S. birthplace. *Id.* at 39223-24. If third level evidence is used, however, the applicant or recipient must also present one of the identity documents listed above. *Id.*

If no evidence from the first three categories is available, an applicant or recipient may use fourth level evidence. *Id.* at 39224. Such evidence "should only be used in the rarest of circumstances" and must be accompanied by one of the identity documents listed above. *Id.* Fourth level evidence includes: census records showing U.S. citizenship or a U.S. birthplace;

4

certain tribal census records, U.S. State Vital Statistics official notifications of birth registratio.
U.S. public birth records that were amended more than five years after the person's birth and medical records, if those documents were created at least five years before the initial Medicaid application date and show a U.S. birthplace; statements signed by the physician or midwife who was in attendance at the time of birth; and institutional admission papers from a nursing facility, skilled care facility or other institution that show a U.S. birthplace. *Id.* If none of those documents is available, an applicant or recipient may submit two affidavits by two individuals, at least one of whom is not related to the applicant or recipient, who provide proof of their own citizenship and identity and have personal knowledge of the events establishing the applicant or recipient's claim of citizenship. *Id.*

The regulations require states to give applicants and recipients a "reasonable opportunity" to comply with the documentation requirement that is "consistent with the time allowed to submit documentation to establish other facets of eligibility," generally forty-five or ninety days. *Id.* at 39225; *see* 42 C.F.R. § 435.911(a) (stating that agencies must determine an applicant's eligibility for Medicaid on the basis of disability within ninety days from the application date and must make eligibility determinations as to all other applicants within forty-five days). Whether a Medicaid recipient will receive benefits during the "reasonable opportunity" period depends on his citizenship status. The statute mandates that non-citizens receive benefits during that period. 42 U.S.C. § 1320b-7(d)(4)(A)(ii). But it effectively eliminates coverage for citizens during that period by barring federal reimbursement for benefits given to citizens who have not fulfilled the documentation requirement. 42 U.S.C. § 1396b(i)(22), (x).

5

If an applicant or recipient makes a good faith attempt to present the required documents but cannot do so within the "reasonable opportunity" period because the documents are unavailable, the regulations require the state to help the applicant or recipient "secur[e] evidence of citizenship." 71 Fed. Reg. at 39216.

Plaintiffs are recipients of or applicants for Medicaid benefits. (First Am. Compl. ¶¶ 5-17.) They contend that the regulations violate the Administrative Procedures Act "(APA")" and the Fifth Amendment and ask the Court to enjoin defendant from enforcing them.

## Discussion

To obtain a temporary restraining order, plaintiffs must first show a likelihood of success on the merits, irreparable harm if the injunction is denied and the inadequacy of a legal remedy. If plaintiffs make all three showings, the Court must balance the harm they would suffer if the injunction were wrongfully denied against the harm defendants would suffer if it were wrongfully granted, and the impact of the dispute on the public interest. *Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 946 (7th Cir. 2006) (stating that "a TRO issued after notice . . . is procedurally as well as functionally . . . like a preliminary injunction"); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999) (setting forth standard for issuing preliminary injunction).

Plaintiffs contend that the Secretary violated the APA and the Fifth Amendment by: (1) failing to conduct the statutorily-mandated outreach and education program before the effective date of the statute; and (2) enacting regulations that (a) arbitrarily and capriciously overturn prior citizenship determinations based on attestations; (b) arbitrarily and capriciously limit the type of documents that are acceptable proof of citizenship and the amount of time for producing them;

6

(c) effectively invalidate the portion of the Medicaid statute that conditions eligibility on an attestation of citizenship; (d) violate their equal protection rights by according different treatment to similarly-situated citizens and non-citizens during the "reasonable opportunity" period; and (e) apply to Medicaid recipients who are exempted from the documentation requirement by the statute.

### Subject Matter Jurisdiction

Defendant says that all of the claims of plaintiffs Bell, Binion, Brown, Crawford, Trammell, Patterson and Otis are moot. The Court agrees. Plaintiffs allege that Bell, Binion, Brown, Crawford and Trammell are recipients of Medicare benefits. (First Am. Compl. ¶¶ 41, 43-44, 46, 48.) They further allege that Patterson and Otis receive SSI benefits which, in their home states of California and North Carolina, makes them automatically eligible for Medicaid. (*Id.* ¶¶ 42, 49); *see* California Medicaid & S-Chip Eligibility, *available at* http://www.hrsa.gov/reimbursement/states/California-Eligibility.htm & North Carolina Medicaid & S-Chip Eligibility, *available at* http://www.hrsa.gov/reimbursement/states/North-Carolina-Eligibility.htm. The contested regulations specifically exempt from the new documentation requirement people eligible for Medicare and those eligible for Medicaid because they receive SSI. *See* 71 Fed. Reg. at 39216 ("States will not be subject to denial of [federal financial participation] in their Medicaid expenditures for SSI recipients who receive Medicaid by virtue of receipt of SSI and Medicare eligibles based upon failure to document citizenship."). Because these plaintiffs are not subject to the new documentation requirement, their claims are moot.

So are the claims of plaintiff Harris. According to the complaint, Harris resides in Illinois and is an SSI recipient. (First Am. Compl. ¶ 45.) Illinois is not one of the states in which SSI recipients are automatically eligible for Medicaid. *See* Illinois Medicaid & S-Chip Eligibility, *available at* http://www.hrsa.gov/reimbursement/states/Illinois-Eligibility.htm. Harris does not, therefore, fall into the exemption. However, the regulations provide an alternative route to proving citizenship for SSI recipients like Harris:

> Not all States provide Medicaid to individuals who are SSI recipients. In those States, the exemption will not provide relief to SSI recipients. However, the Social Security Administration (SSA) maintains a database, known as the State Data Exchange (SDX) which contains the needed information to identify whether an individual has already been found to be a citizen by the SSA and the States have the option to cross match with this database to meet these requirements without using the hierarchical process for obtaining documents discussed in the regulation.

71 Fed. Reg. at 39216. On July 19, 2006, Illinois adopted this option. *See* Ill. Dep't Healthcare & Family Servs., 7/19/06 Supplement 7/1/06 Policy Mem. U.S. Citizenship & Identity for Med. Programs, *available at* http://www.dhs.state.il.us/ts/cfsmm/onenet.aspx?item=25388. Because Harris need not present any citizenship documentation to retain his Medicaid eligibility, his claims are also moot.[2]

These plaintiffs do not contend that the regulations will have any impact on them. But they argue that their claims remain justiciable because the Secretary could eliminate the exemptions from the regulations at any time. The Court disagrees. Though denominated "interim," the regulations are currently in force and binding on the states, which must honor the

---

[2]Plaintiffs say that Harris' claim, and those of class he seeks to represent, survive because his claim was "live" when the suit was filed. The Court disagrees. Plaintiffs challenged the regulations for the first time in their first amended complaint, which was filed on July 21, 2006. Illinois adopted the SDX-match option for SSI recipients on July 19, 2006. Thus, Harris' claim was moot when the suit was filed.

exemptions set forth in them. *See* 71 Fed. Reg. at 39214 (stating that regulations are effective as of July 6, 2006). Thus, unless and until the Secretary eliminates the exemptions, these plaintiffs have no live controversy with him.[3]

The Secretary also argues that plaintiffs' APA claim premised on his alleged failure to conduct timely outreach is moot because he started an outreach program the day after the statute was passed. (Def.'s Mem. Law Opp'n Pls.' Am. Mot. TRO, Fenton Decl. ¶ 4.) Between the statute's enactment and its effective date, the Secretary says, his Department had an unspecified number of teleconferences and meetings with state Medicaid officials, various interest groups and the public at large to explain the new requirements, and sent a letter to state Medicaid Directors and others that discussed them. (*Id.* ¶¶ 4-6.) The Secretary does not contend, however, that these efforts satisfied his outreach obligation, and the fact that outreach continued after the statute's effective date indicates that he did not. (*See id.* ¶¶ 8-10.) Therefore, plaintiffs' outreach claim is not moot.

Defendant's next line of attack is standing. He says the remaining plaintiffs, A.L., West, Watkins, T.W., Jo. N., Ja. N. and Windley, lack standing to pursue the outreach claim as well as their due process and APA claims that challenge the type of documents required by the regulations and the amount of time for producing them, the regulations' application to recipients who previously attested to their citizenship, and the regulations' *de facto* change of the statutory eligibility requirement. Plaintiffs have standing to pursue these claims if they have an injury in fact that is fairly traceable to the contested regulations and is likely to be redressed by a decision in their favor. *Plotkin v. Ryan,* 239 F.3d 882, 884 (7th Cir. 2001) (setting forth Article III

---

[3]Moreover, even if the Secretary's ability to amend the regulations transformed these claims into live controversies, they would not be ripe for adjudication until such an amendment occurred.

9

standing requirements); *see Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39-40 (1976) (stating that Article III standing requirements apply to APA claims).

Plaintiffs say they satisfy the injury component of standing for all of these claims because the Secretary's alleged action or inaction will (1) cause them to lose or be denied Medicaid benefits and suffer associated stress, or (2) force them to invest time and money, or more time and money, to try to obtain the required documents. (*See* First Am. Compl. ¶ 54.)

Defendant says the first alleged injury is speculative because, though plaintiffs say they lack certain documents, they do not allege that they are unable to obtain *any* of the necessary proof. Absent evidence that plaintiffs are wholly unable to fulfill the documentation requirement, defendant says the alleged threat to their benefits and the stress associated with it are hypothetical.

The Court agrees. None of these plaintiffs alleges that he or she cannot provide *any* proof of U.S. citizenship and identity. A.L.'s mother says that she does not have a birth certificate, final adoption decree, passport, driver's license or any other form of picture identification for A.L., (*see* App. Supp. Pls.' First Am. Compl., Am. Mot. TRO & Preliminary Inj. ["App."], Ex. 7, Bauknight Decl. ¶¶ 9-10), but she does not assert that she: (1) cannot obtain "a statement from a State approved adoption agency that shows [A.L.'s] name and U.S. place of birth"; (2) does not have or cannot obtain insurance, medical or census records or records from any of the facilities in which A.L. has resided that show her birthplace; or (3) cannot obtain any of the acceptable identity evidence. Similarly, West and Watkins say they do not have passports, birth certificates or, in Watkins' case, a final adoption decree, and neither knows of any living person who witnessed her birth. (App., Ex. 10, West Decl. ¶¶ 4-6; *id.*, Ex. 11, Watkins Decl. ¶¶ 5-6.) However, neither woman says that she does not have or cannot obtain insurance, medical or

10

census records that show her birthplace or any of the identity evidence deemed acceptable by the regulations. (*Id.*) Likewise, Janie Cook, T.W., Jo. N. and Ja. N.'s grandmother, says that she does not have and cannot obtain the children's birth certificates. (*Id.*, Ex. 12, Cook Decl. ¶¶ 4-5.) But she does not say that she cannot obtain hospital or other medical records, insurance records or acceptable proof of the children's identities. (*Id.*) Finally, Windley says that he does not have a passport, birth certificate, driver's license or state-issued identification card and does not know of any living person who witnessed his birth. (*Id.*, Ex. 13, Windley Decl. ¶¶ 6-9.) But he does not say that he does not have or cannot obtain insurance, medical or census records or records from the assisted living facility where he resides that show his birthplace or any of the acceptable identity evidence. (*Id.*)

Moreover, even if these plaintiffs had averred an inability to obtain any of the required documents, the alleged threat to their benefits would still be speculative. The regulations require states to assist an applicant or recipient "in securing evidence of citizenship" if that person tries, in good faith, to present the required documents but cannot do so because they are unavailable. 71 Fed. Reg. at 39216. Because plaintiffs have not yet been asked to provide proof of citizenship, let alone tried and failed to do so, they do not know whether (1) the states' efforts will enable them to satisfy the requirement, or (2) the state will waive the requirement if, despite all efforts, the necessary documents cannot be procured. Until they do, plaintiffs' contention that the regulations endanger their benefits is nothing more than conjecture.

However, the second asserted injury, that the regulations will require plaintiffs to invest time and resources, or more time and resources, to satisfy the requirement is sufficient to support the injury component of standing for their due process and APA claims that challenge the type of documents required by the regulations and the amount of time for producing them, the

11

regulations' application to recipients who previously attested to their citizenship, the regulations' *de facto* change of the statutory eligibility requirement and the Secretary's alleged failure to conduct timely outreach. Likewise, the disparate treatment of similarly situated citizens and non-citizens that plaintiffs allege is sufficient to satisfy the injury component of standing for their equal protection claim.

Plaintiffs cannot, however, satisfy the redressability component of standing for these claims. The citizenship documentation requirement and the contested distinction it draws between citizens and non-citizens arise from the statute, not the regulations. *See* 42 U.S.C. §§ 1320b-7(d)(4)(A)(ii), 1396b(i)(22), (x). The injunction plaintiffs seek, to bar defendant from enforcing the regulations, would not invalidate the citizenship documentation requirement in the statute or spare them the burden, or additional burden, of complying with it. In fact, if the injunction were issued, plaintiffs' task would be even more onerous because the universe of acceptable documentation set forth in the statute is much smaller than that set forth in the regulations. *Compare* 42 U.S.C. § 1396b(x)(3), *with* 71 Fed. Reg. at 39222-25.

Plaintiffs say that conclusion is based on a mischaracterization of the relief they seek, which is an order "enjoin[ing] the states from terminating, denying, or delaying Medicaid coverage for failure to document citizenship and requiring the Secretary to inform states that he will not attempt to recoup the federal share of the cost of any services provided as a result of the order." (Pls.' Reply at 13.) That is not, however, the relief plaintiffs request in the first amended complaint, nor is it relief this Court can provide. The Court cannot order the state Medicaid agencies, which are not parties to this suit, to do anything. The only person whose actions the Court can direct is the Secretary, a reality reflected by the prayer for relief in the first amended complaint: "[P]laintiffs pray that this Court:  . . .  [p]reliminarily and permanently enjoin the

12

Secretary from applying, implementing or effectuating in any way [the statute] in a manner that violates plaintiffs' rights." (First Am. Compl., Prayer Relief.) Because the injunction plaintiffs actually seek, and the Court could issue, would not remedy their injury, the redressability element of standing is absent.

The fact that the requested injunction will not redress these plaintiffs' anticipated injuries leads to their last standing problem: traceability. The contested regulations do not create the citizenship documentation, they simply flesh it out. Thus, any harm plaintiffs may suffer as a result of the requirement stems from the statute not the regulations. Absent a showing that their injury can be traced to the regulations, which they have not made, plaintiffs do not have standing to pursue these claims.[4]

In sum, A.L., West, Watkins, T.W., Jo. N., Ja. N. and Windley lack standing to pursue their equal protection claim and their due process and APA claims that challenge the type of documents required by the regulations and the time allotted to produce them, the regulations' application to recipients who previously attested to their citizenship, the regulations' *de facto* change of the statutory eligibility requirement and the Secretary's alleged failure to conduct timely outreach. Therefore, these claims are dismissed for lack of subject matter jurisdiction.

The situation is different for A.L.'s APA claim challenging the Secretary's application of the regulations to her. A.L. says that children like her, who were adopted pursuant to adoption assistance agreements under Title IV-E of the Social Security Act, are exempted from the documentation requirement by the statute. *See* 42 U.S.C. §§ 1396a(a)(10)(A)(i)(I) (requiring

---

[4]Plaintiffs' stated disinterest in "identify[ing] the source of any threatened violations of rights" or "assign[ing] . . . unlawfulness to either [the statute] or the implementing regulations," Pls.' Reply at 5-6, does not excuse them from complying with the traceability requirement.

13

states to provide Medicaid to Title IV-E adoptees); 42 U.S.C. § 1396b(i)(22), (x)(1) (stating that the documentation requirement applies only to people whose eligibility for Medicaid depends on their declaration of U.S. citizenship). If that is true, the regulations harm A.L. by making her prove her citizenship, an injury that is traceable to the regulations and can be redressed by an injunction against the Secretary.

## Likelihood of Success on the Merits

To prevail on her APA claim, A.L. must prove that the regulations are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "[R]eviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act . . . [, but] they must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Bureau of Alcohol, Tobacco & Firearms v. Fed. Labor Relations Auth.*, 464 U.S. 89, 97 (1983) (quotation and citation omitted).

To the extent they are applied to Title IV-E adoptees like A.L., the regulations appear to conflict with the Medicaid statute. According to the statute, Title IV-E adoptees are not among the people required to attest to U.S. citizenship to establish their eligibility for Medicaid, the only group to whom the documentation requirement applies. *See* 42 U.S.C. §§ 1396a(a)(10)(A)(i)(I) (requiring states to provide Medicaid to, among others, people "who are receiving aid or assistance under any plan of the State approved under . . . part E of subchapter IV of [the Social Security Act]"); 45 C.F.R. § 1356.40(b)(3) (requiring adoption assistance agreements under Title IV-E to "specify that the child is eligible for Medicaid services"); 42 U.S.C. § 1396b(i)(22), (x)(1) (stating that the documentation requirement applies only to one who "declares . . . [that she

14

is] a citizen or national of the United States *for purposes of establishing eligibility* for [Medicaid] benefits" (emphasis added)). Yet, the regulations require Title IV-E adoptees like A.L. to comply with it: "Title IV-E children receiving Medicaid, while not required to declare citizenship for IV-E, must have in their Medicaid file a declaration of citizenship or satisfactory immigration status and documentary evidence of the citizenship or satisfactory immigration status claimed on the declaration." 71 Fed. Reg. at 39216. If, as it appears, the regulation contradicts the statute, the Secretary has abused his discretion to promulgate regulations and violated the APA. Thus, A.L. has a substantial likelihood of success on this claim.

## Inadequacy of Legal Remedy

A.L. asserts that there is no legal remedy in this case because sovereign immunity bars her from collecting damages. The Court agrees. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The Secretary has not identified any statute that waives his immunity with respect to this claim. Because A.L. cannot be compensated for any harm the regulations may cause her, she has no adequate legal remedy.[5]

## Irreparable Harm

A.L. says that she will be irreparably harmed in two ways if the injunction is not issued: (1) she will suffer emotional distress from trying to comply with the requirement; and (2) she will suffer distress from anticipating that her benefits and, thus, her medical care, will be terminated.

---

[5]The Secretary apparently concedes this point as he does not discuss even address the adequacy of a legal remedy in his opposition brief.

15

The former harm is not irreparable. Though obtaining the documents necessary to fulfill the requirement may be aggravating or annoying, the stress associated with that task is a far cry from that which has been held to constitute irreparable harm. *See Robertson ex rel. Robertson v. Granite City Cmty. Unit Sch. Dist. No. 9*, 684 F. Supp. 1002, 1005 (S.D. Ill. 1988) (finding that elementary school child with AIDS would suffer irreparable harm if school board were not ordered to place him back in a classroom with his peers because "it is difficult . . . to imagine anything more traumatic for a child than going to school and being placed in a classroom by himself, not being allowed to play with other children, [or] . . . eat with his classmates" and the evidence showed that the child was "acutely aware of his isolation[, . . . and] suffer[ed] from overwhelming feelings of loneliness and exclusion," which, if not remedied immediately, "would result in marked and adverse deviations in personality growth"); *Norton v. Richardson*, 333 F. Supp. 1382, 1384 (E.D. Wis. 1971) (stating that the stigma of receiving welfare rather than Social Security disability insurance benefits could constitute irreparable harm in the context of a challenge to summary suspensions of those benefits because "[a] significant portion of this nation distinguishes adversely between living off of insurance benefits and living off of welfare").

Stress caused by anticipating the loss of benefits and necessary medical care may, however, be irreparable. But A.L. has not demonstrated that she is likely to suffer that harm. As discussed above, A.L. has not shown that she is in danger of losing her benefits if an injunction is not issued. Absent evidence that the regulations are likely to cause her to lose her benefits, she has not shown that she has any reason to anticipate – and, thus, to be damaged by anticipating – that loss.

16

A.L.'s failure to show irreparable harm dooms her quest for injunctive relief. *See Cooper*, 196 F.3d at 813 (stating that court considers balance of the harms and the public interest only if plaintiff satisfies the three threshold factors). Her motion for a TRO is, therefore, denied.

## Class Certification

As discussed above, none of the named plaintiffs has standing to pursue their due process and equal protection claims or the APA claims that challenge the type of documents required by the regulations and the time for producing them, the regulations' application to recipients who previously attested to their citizenship, the regulations' *de facto* change of the statutory eligibility requirement and the Secretary's alleged failure to conduct timely outreach. Plaintiffs cannot, therefore, represent proposed Classes A and B, the group of people affected by those aspects of the regulations. *See Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs . . . . Standing cannot be acquired through the back door of a class action." (quotation omitted)). Accordingly, the Court confines the class certification discussion to proposed Class C, defined in the first amended complaint as:

> All persons who are receiving or will receive health coverage under the Medicaid Program, 42 U.S.C. § 1396 *et seq.*, and who are not required to make a declaration of citizenship under 42 U.S.C. § 1320b-7 in connection with an application for Medicaid because they acquire their eligibility for Medicaid coverage as a result of the determination of their eligibility for Foster Care and Adoption Assistance under Title IV-E of the Social Security Act or any other program listed in 42 U.S.C. § 1396a(a)(10)(A)(i)(I) and (II).

(*Id.* ¶ 20.)

17

Class certification is appropriate only if all of the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and one of the requirements of Rule 23(b) have been met. FED. R. CIV. P. 23(b); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Under Rule 23(a), a class can be certified only if:

> (1) [it] is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a)(1)-(4). Rule 23(b) is satisfied if, among other things, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2).

Class C, as currently defined, includes not only Title IV-E adoptees like A.L., but all other people "who acquire their eligibility for Medicaid coverage as a result of the determination of their eligibility for . . . any other program listed in 42 U.S.C. § 1396(a)(10)(A)(i)(I) and (II)." (First Am. Compl. ¶ 20.) However, the regulations do not say that people who acquire their eligibility through SSI or through state programs funded by grants for old-age assistance, temporary assistance for needy families, aid to the blind or aid to the permanently and totally disabled, the other programs listed in 42 U.S.C. § 1396a(a)(10)(A)(i)(I) and (II), will be subject to the documentation requirement.[6] Because those people have no controversy with the Secretary, the Court amends the definition of the proposed class to eliminate them.

---

[6] In fact, as noted above, one of those groups, people who are eligible for Medicaid because they receive SSI, are specifically exempted from the requirement.

With respect to amended Class C, A.L. says that: (1) the class of Title IV-E adoptees includes in excess of 523,000 people; (2) there is a question of law common to the class; (3) A.L.'s claim is typical of the claims of the putative class because all of the claims arise from the challenged regulations; and (4) she is an adequate representative because her claim is not antagonistic to those of the class and her lawyers are seasoned class action litigators. With respect to Rule 23(b), A.L. says that the Secretary "has acted or refused to act on grounds generally applicable to the class."

Amended Class C satisfies all of the Rule 23 requirements. The class is too numerous to be practicably joined to this suit and there is a question of law common to all of the members – whether the documentation requirement can legally be applied to them. Further, A.L.'s claims are typical of those of the putative class members because they all arise from the Secretary's intention to apply the documentation requirement to them. A.L. is also an adequate class representative because she has counsel skilled in class action suits and the order she seeks would benefit all class members. Moreover, given his stated intention to apply the requirement to Title IV-E adoptees, despite their apparent statutory exemption, the Secretary "has acted . . . on grounds generally applicable to the class."

The Secretary does not specifically challenge these conclusions. He argues, however, that a nationwide class, which is what A.L. proposes, is too broad. The Court disagrees. The contested regulations are not applicable to a single state or jurisdiction, and A.L. does not challenge any particular state's application of them. Rather, she challenges the Secretary's authority to enforce them at all against people whose Medicaid eligibility is derived from a Title IV-E adoption assistance agreement. Limiting the class to people in one state or region might lead to inconsistent adjudications and the application of different standards to similarly situated

19

individuals in different states. Thus, a nationwide class seems particularly appropriate in this case.

The Secretary also objects to the lack of an explicit temporal limitation on Class C. In this case, however, the class limits are inherent in the claim. The class seeks a declaration that the Secretary cannot enforce the citizenship documentation requirement against them. Thus, its temporal boundaries are necessarily the effective date of the regulations to the time their validity is determined. A.L.'s motion for certification of Class C, as amended by the Court, is, therefore, granted.

## Conclusion

For the reasons stated above, the Court dismisses for lack of subject matter jurisdiction: (1) all of the claims of plaintiffs Bell, Binion, Brown, Crawford, Trammell, Patterson, Otis and Harris; and (2) the equal protection claims, and the due process and APA claims of A.L., West, Watkins, T.W., Jo. N., Ja. N. and Windley that contest the kind of documents required by the regulations and the time for producing them, the regulations' application to Medicaid recipients who have previously attested to their citizenship, the regulations' *de facto* change in the statutory eligibility requirement and the Secretary's alleged failure to conduct timely outreach.

Plaintiffs' amended motion for a temporary restraining order [doc. no. 33-1] with respect to the remaining claim, A.L.'s APA claim based on the Secretary's application of the documentation requirement to Title IV-E adoptees, is denied.

Plaintiffs' amended motion for class certification [doc. no. 35-1] is granted in part and stricken as moot in part. The motion is granted as to Amended Class C, defined as:

All persons who are receiving or will receive health coverage under the Medicaid Program, 42 U.S.C. § 1396 et seq., and who are not required to make a declaration of citizenship under 42 U.S.C. § 1320b-7 in connection with an application for Medicaid because they acquire their eligibility for Medicaid coverage as a result of the determination of their eligibility for Foster Care and Adoption Assistance under Title IV-E of the Social Security Act.

The motion is stricken as moot as to Classes A and B.

Plaintiffs' amended motion for a preliminary injunction [doc. no. 33-2] is referred to the

Magistrate Judge.

**SO ORDERED.**                    **ENTERED:**

SEP 1 4 2006

HON. RONALD A. GUZMAN
**United States District Judge**

21